# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER GIERER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14-CV-1382 CAS |
| | ) | |
| REHAB MEDICAL, INC. and | ) | |
| JENNA DOMECK, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants Rehab Medical, Inc. and Jenna Domeck's motion to dismiss directed to plaintiff's Second Amended Complaint. Plaintiff Jennifer Gierer opposes the motion. The matter is fully briefed and ready for decision. For the following reasons, defendants' motion will be granted in part and denied in part.

**Background**

Plaintiff, a former sales representative for defendant Rehab Medical, Inc. ("Rehab Medical"), filed this action against her former employer and her former regional manager, defendant Jenna Domeck, alleging retaliation for engaging in lawful acts under the False Claims Act ("FCA"). She brings her action in four counts: retaliation under the FCA (Count I); unpaid wages and commissions due under Missouri Revised Statute § 290.110 (Count II); unjust enrichment (Count III); and wrongful termination in violation of public policy (Count IV). Counts I through III are asserted against Rehab Medical only; Count IV is asserted against both defendants. Defendant Rehab Medical is a supplier of various electric-motorized wheelchairs. Plaintiff alleges she was subject to retaliation after expressing concern regarding Rehab Medical's alleged falsification of documents to Medicare.

Defendants move to dismiss plaintiff's request for punitive damages under the FCA, and move to dismiss Counts III and IV in their entirety for failure to state a claim.

**Legal Standard**

On a motion to dismiss, the Court accepts as true the factual allegations contained in the complaint and grants the plaintiff the benefit of all reasonable inferences that can be drawn from those allegations. See Lustgraaf v. Behrens, 619 F.3d 867, 872-73 (8th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

**Discussion**

    A.    Punitive Damages Under the FCA

In their first argument, defendants state that plaintiff's request for punitive damages should be dismissed because punitive damages are not recoverable under the FCA.

Many court have addressed the issue of whether the FCA, which allows for treble damages, also allows for punitive damages. Courts have routinely held that Congress did not intend for a prevailing employee to receive punitive damages under the FCA. See e.g., Leggins v. Orlando Housing Auth., 2013 WL 937739, at *2-3 (M.D. Fla. Mar. 11, 2013) (finding Congress did not intend for punitive damages to be available under the anti-retaliation section of the FCA); Morse Diesel Int'l, Inc. v. United States, 79 Fed. Cl. 116, 126 (2007); United States ex rel. Graber v. City of New York, 8 F.Supp.2d 343, 351 (S.D.N.Y. 1998); Hammond v. Northland Counseling Ctr., Inc., 1998 WL 315333, at *4, 6 (D. Minn. Feb. 27, 1998); see also Vermont Agency of Nat. Resources

v. United States ex rel. Stevens, 529 U.S. 765, 784 (2000) (stating the FCA imposes treble damages that are "punitive in nature"); United States ex rel. Garibaldi v. Orleans Parish Sch. Bd., 244 F.3d 486, 491 n.5 (5th Cir. 2001) ("The treble damages imposed by the False Claims Act are punitive damages.").

Plaintiff attempts to distinguish these rulings, stating that she acknowledges that punitive damages have not been allowed in these prior cases, but stating that many were in the context of attempting to recover punitive damages against state entities. This argument does not change the prevailing analysis that (1) Congress refused to enact the FCA with a punitive damages provision; the original Senate version of the 1986 amendment to the FCA provided for an award of punitive damages, however, the version ultimately enacted omitted this language (Leggins, 2013 WL 937739 at *2-3; Hammond, 1998 WL 315333, at *6); and (2) the plain meaning of the FCA does not authorize punitive damages (Hammond, 1998 WL 315333, at *4-5). While plaintiff is correct that the majority of the cited cases are against state entities, this fact does not change the statutory analysis of the anti-retaliation section of the FCA. In light of the substantial case law refusing to allow punitive damages under the anti-retaliation section of the FCA, the Court concludes that defendants' motion to dismiss should be granted as to those portions of Count I alleging punitive damages.[1]

B.  Unjust Enrichment Claim (Count III)

Defendants also argues that plaintiff fails to state a claim for unjust enrichment. In Missouri, the elements of an unjust enrichment claim are: "(1) the plaintiff conferred a benefit on the

---

[1] As stated above, plaintiff's allegations of FCA retaliation in Count I are asserted solely against defendant Rehab Medical. (See 2nd Am. Compl. ¶¶ 73-84.) To the extent plaintiff seeks to assert these claims against defendant Domeck, she would need to seek leave to amend the complaint.

defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted or retained the benefit under inequitable or unjust circumstances." Johnson Group, Inc. v. Grasso Bros., Inc., 939 S.W.2d 28, 30 (Mo. Ct. App. 1997); see also Jackson County, Mo. ex rel. Nixon v. MERSCORP, Inc., 915 F.Supp.2d 1064, 1069 (W.D. Mo. 2013).

Defendants move to dismiss the unjust enrichment claim, stating that a plaintiff must establish that she "performed work in excess of her ordinary duties for the benefit of the employer." (Defs.' Mem. at 3.) Defendants cite Roebuck v. Valentine-Radford, Inc., 956 S.W.2d 329, 332 (Mo. Ct. App. 1997), for this proposition. The Roebuck case is factually distinguishable from plaintiff's case. In Roebuck, a salaried employee took a position with a vague job description. After he left his employment, he sued his employer stating that the duties he agreed to perform when he was hired were changed and expanded and that "the services performed by [him] were of such a different character that compensation could be presumed." Id. at 333. He argued that he performed additional duties and his employer accepted the benefits but refused to pay him for the reasonable value. The Court ruled against plaintiff, finding that his so-called "additional duties" were not so different and so plainly beyond the scope of his original agreement to warrant an inference of an implied promise to pay.

In our case, plaintiff is not arguing that she performed additional duties for which she was not compensated. Rather, she claims her employment agreement provided for an annual salary with sales commissions. Her compensation also included paid time off, which was earned continuously. In her unjust enrichment claim, she states that although she had earned wages, commissions and unpaid time off, defendant Rehab Medical refused to pay her the amounts due and owing; accepted and retained the benefit of her work; and that this retention of the benefit is inequitable under the circumstances. Plaintiff, unlike Mr. Roebuck, is not claiming she assumed additional duties that fell

outside her employment agreement. She is seeking payment of unpaid wages, commissions, and unused paid time off.

Plaintiff's complaint contains sufficient factual matter to state a plausible claim for unjust enrichment. Defendants' motion to dismiss Count III will be denied.

    C.    <u>Wrongful Discharge in Violation of Public Policy (Count IV)</u>

Finally, defendants state that plaintiff's wrongful discharge claim is preempted by the FCA and should be dismissed.

Federal law will preempt and displace state law in three circumstances: (1) when Congress enacts a statute that explicitly preempts state law; (2) when Congress regulates in such a pervasive manner that it can be inferred Congress intended to displace state law, and; (3) when state law actually conflicts with federal law. <u>See</u>, <u>e.g.</u>, <u>English v. General Elec. Co.</u>, 496 U.S. 72, 78-79 (1990). Defendants do not argue that Congress explicitly preempted state law by enacting the FCA, nor do they allege any actual conflict between the FCA's whistleblowing provisions and Missouri state law of wrongful discharge. The analysis rests on whether the FCA is sufficiently comprehensive that the Court can infer an intent to displace state law.

Courts addressing this issue find little evidence of any such Congressional intent. <u>See</u>, <u>e.g.</u>, <u>Salazar v. Monaco Enterprises, Inc.</u>, 2015 WL 5716000, at *1-3 (E.D. Wash. Sept. 29, 2015) (holding the FCA does not preclude plaintiffs from simultaneously raising state law wrongful discharge claims); <u>Boone v. MountainMade Found.</u>, 857 F.Supp.2d 111, 115-17 (D.D.C. 2012) (same); <u>Glynn v. EDO Corp.</u>, 536 F.Supp.2d 595, 614 (D. Md. 2008) (finding plaintiff could proceed with state wrongful discharge claim despite availability of a private right of action under the FCA); <u>Palladino ex rel. United States v. VNA of S. N.J., Inc.</u>, 68 F.Supp.2d 455, 465-66 (D.N.J.

1999) (finding the FCA does not preempt state whistleblowing statutes); but see Goodwin v. Novartis Pharm. Corp., 2012 WL 1079086, at *5 (W.D. Ky. Mar. 30, 2012).

Under Missouri law, the federal courts have permitted a plaintiff to maintain both an action for retaliation under the FCA and an action under Missouri state law for wrongful termination. See United States ex rel. Miller v. Weston Educ., Inc., 2012 WL 6190307, at *13-14 (W.D. Mo. Dec. 12, 2012) (finding Missouri wrongful termination claims not preempted by FCA), rev'd on other grounds, 784 F.3d 1198 (8th Cir. 2015). The Miller case allowed both causes of action to proceed based on the separate allegations of each claim. The court found the relators' FCA retaliation claims were based on defendant's retaliatory response to the relators' efforts to expose FCA violations. By contrast, the relators' wrongful discharge claims were based on defendant's retaliatory response to the relators' efforts to expose violations of various state and federal statues and regulations. Id. at *14. "As such, [the FCA] does not preempt Relators' common law wrongful termination claims." Id.

Here, like Miller, plaintiff's FCA retaliation claim is based on defendant Rehab Medical's retaliatory response to plaintiff's efforts to expose FCA violations. Her wrongful discharge claim, however, is premised upon violations of "federal and state statutes," including violations of 18 U.S.C. § 1347 (health care fraud) and 18 U.S.C. §§ 1341, 1343 (mail and wire fraud). (2nd Am. Compl. ¶ 117; Pl's Resp. at 7.) Because the FCA offers remedies only for retaliatory actions taken in response to an employee's efforts to expose an FCA violation, and plaintiff's state law claim seeks to remedy a different wrong, the FCA does not preempt plaintiff's wrongful termination claim under Missouri law. See Miller, 2012 WL 6190307, at *14.

The Court finds plaintiff may bring a claim for wrongful discharge in violation of public policy under Missouri law. Missouri recognizes a public policy exception to the general rule that

employees are terminable at will. See Fleshner v. Pepose Vision Inst., P.C., 304 S.W.3d 81, 91-92 (Mo. 2010) (en banc). "An at-will employee may not be terminated (1) for refusing to violate the law or any well-established and clear mandate of public policy as expressed in the constitution, statutes, regulations promulgated pursuant to the statue, or rule created by a governmental body or (2) for reporting wrongdoing or violations of law to superiors or public authorities." Id. at 92. Plaintiff has stated a claim for wrongful discharge in violation of public policy under Missouri law, and the existence of a civil remedy under the FCA does not preclude her from simultaneously raising this public policy tort.

The Court will grant defendant Ms. Domeck's motion to dismiss her from the wrongful termination claim in Count IV, however, as there was no allegation of an employer/employee relationship between plaintiff and Ms. Domeck. See Farrow v. Saint Francis Med. Ctr., 407 S.W.3d 579, 595 (Mo. 2013) (en banc) ("[A] wrongful discharge cause of action requires an employer/employee relationship.") (quoted case omitted).

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**. [Doc. 35] The motion is **GRANTED** as to plaintiff's claim for punitive damages under the False Claims Act (Count I), and **GRANTED** as to plaintiff's claim against defendant Jenna Domeck for wrongful termination in violation of public policy (Count IV). The motion is **DENIED** in all other respects.

An appropriate Order of Partial Dismissal will accompany this Memorandum and Order.

_____
 **CHARLES A. SHAW**
 **UNITED STATES DISTRICT JUDGE**

Dated this  21st  day of December, 2015.